NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TITO JACKSON, individually and on behalf of others similarly situated, | |
| Plaintiffs, | |
| v. | Civil Action No. 07-3250 (GEB-DEA) |
| ALPHARMA, INC. | MEMORANDUM OPINION |
| Defendant. | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of Defendant Alpharma, Inc. ("Alpharma" or "defendant") for summary judgment against Plaintiffs, Tito Jackson and others similarly situated ("Jackson" or "plaintiffs"). (Doc. No. 81-2.) The motion is opposed by plaintiffs. (Doc. No. 83.) The matter was fully briefed on April 19, 2010, with a return date of May 3, 2010. Subsequent to the return date, the parties notified the Court of changes or updates in authority. (Doc. Nos. 85, 86, 87.) For the reasons that follow, Alpharma's motion will be granted.

**I.    BACKGROUND**

This case originates from a complaint filed on July 10, 2007, and amended on November 5, 2007. (Doc. Nos. 1, 20.) The amended complaint alleges that the plaintiffs, former

pharmaceutical sales representatives ("PSRs"), are due unpaid wages and overtime pay pursuant to 29 U.S.C. § 216(b) (The Fair Labor Standards Act) and N.J.S.A. 34:11-57 *et seq*. (The New Jersey Wage Collection Law) from Alpharma, their employer.[1] (Am. Compl. at ¶ 1; Doc. No. 20.)  On March 16, 2009, Alpharma filed a motion to stay these proceedings pending the outcome of *Smith v. Johnson & Johnson*, wherein the Third Circuit was expected to rule on the precise issue faced in this case.  (Doc. No. 71.)  On March 24, 2009, that motion was granted and the defendants were given 45 days from the issuance of the Third Circuit's opinion to file a summary judgment motion.  (Doc. No. 78.)  On February 2, 2010, the Third Circuit issued its opinion in *Smith v. Johnson & Johnson*, 593 F.3d 280 (3d Cir. 2010), and defendants then timely filed the instant motion for summary judgment (Doc. No. 81).

The following summary of the facts is taken from the parties statements of undisputed material facts filed pursuant to L. CIV. R. 56.1 and are not to be construed as Findings of Fact. The plaintiffs worked as PSRs for Alpharma, which manufactures Kadian and Flector, two treatments for pain.  (Def.'s 56.1 Stmt. at ¶¶ 2-4; Doc. No. 81-4.)  Because of federal statutes and regulations, Kadian and Flector can be sold or dispensed to the public only by a prescription written by a licensed healthcare professional.  (*Id.* at ¶ 4.)  Therefore, plaintiffs did not "sell" the drugs, but rather called on doctors and pharmacies to encourage them to prescribe or stock Alpharma's products over the products of its competitors.  (*Id.* at ¶¶ 5, 6.)

Defendant paints a picture of the PSR with unlimited autonomy, given only a list of doctors and an expense account with which to effectuate their goal.  (Def.'s 56.1 Stmt. at ¶¶ 38-

---

[1] Alpharma is now owned by King Pharmaceuticals.  Because the purchase closed during this litigation, the parties and the Court will continue to refer to the defendant as "Alpharma."

71.) The facts that defendant highlights to pinpoint the PSRs' discretion include: (1) that each PSR worked alone and not with partners or on teams; (2) that plaintiffs spent only two days with their District Manager every one to two months; (3) that upon the beginning of their employment with Alpharma, each plaintiff was given a list of 500 physicians in their territory, and it was up to each PSR to narrow this list to approximately 120 physicians, and further that it was up to each PSR to decide how best to contact these doctors and move their business; (4) that PSRs had similar experiences when dealing with pharmacies; (5) that the PSRs planned their own routing, the process by which they would map out what their activities would be for the upcoming weeks; and (6) that each PSR prepared an annual business plan, which laid out how the PSR intended to grow his or her business in the coming year.

Plaintiffs, on the other hand, paint a picture of Alpharma "micro-managing" its PSRs. Alpharma notes that from the beginning of their employment, Alpharma PSRs receive training and instruction from Alpharma specifically designed to ensure the Alpharma Representatives did not deviate from corporate-approved messages about the drugs. (Pl.'s 56.1 Stmt. at ¶ 22; Doc. No. 83-1.) Plaintiffs also state that they had no discretion concerning, and did not exercise independent judgment in framing Alpharma's message, and Alpharma explicitly directed its PSRs to use company scripted messages. (*Id.* at ¶¶ 23-25.) Further, with respect to Kadian, plaintiffs state that they had no discretion in describing its effectiveness, but instead were trained to adhere to the information that was already on the package insert. (*Id.* at ¶ 27.) Alpharma also provided specific information in the form of handouts and promotional literature that could not be altered or modified by the PSRs, nor could the PSRs develop their own aids to use in their work. (*Id.* at ¶ 31.) Further, according to plaintiffs, their direct supervisors were micro-managers

that "wanted to know everything you were doing" and required plaintiffs to check in with management at least three times per day. (*Id.* at ¶¶ 34-35.)

## II.   DISCUSSION

Defendant moves for summary judgment, arguing three main points: (1) that the plaintiffs are exempt from the FLSA's overtime requirements because they were employed in a "bona fide administrative capacity," also called the "administrative exemption;" (2) that the plaintiffs are exempt from the FLSA's overtime requirements because they were employed in the capacity of an outside salesperson, also called the "outside sales exemption;" and (3) the state law claims under the New Jersey Wage Collection Law ("NJWCL") fail as to the plaintiffs that were not employed in the state of New Jersey, and further that the plaintiffs were not misclassified under the NJWCL.

### A.   Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist,

the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

    **B.**    **Analysis**

The Fair Labor Standards Act establishes exemptions to its overtime requirements. 29 U.S.C. §§ 207, 213. Congress has empowered the Secretary of Labor to define and delimit the terms of the FLSA's exemptions by regulation. 29 U.S.C. § 213(a). Under the administrative employee exemption, anyone employed in a bona fide administrative capacity is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). The Secretary has defined an administrative employee as someone:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

The parties concede that the plaintiffs in this case meet the salary requirement of the rules. (Pl.'s Br. in Opp. at Fn. 8; Doc. No. 83.) The main disputes are the second and third prongs: whether the PSRs work is directly related to management or general business operations, and whether the PSRs exercise discretion and independent judgment with respect to matters of

significance.

With respect to the second prong, the phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). The regulations distinguish this type of work from, for example, "working on a manufacturing production line" or "selling a product in a retail or service establishment." *Id.* The regulations state that "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . advertising; marketing . . . and similar activities." 29 C.F.R. § 541.201(b). The regulations specifically include "marketing" and "promoting sales" in the definition of general business operations. *Id.* Because the PSRs in this case were clearly marketing and promoting the sale of Alpharma's products, the Court concludes that they were performing work "directly related to the management or general business operations" of Alpharma.

With respect to the third prong:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

Defendant argues that the primary duties of the PSRs require discretion and independent judgment with respect to matters of significance. (Def.'s Br. at 24; Doc. No. 81-2.) Defendant relies heavily on *Smith v. Johnson & Johnson*, 593 F.3d 280 (3d Cir. 2010), the pending outcome of which caused this matter to be stayed. In *Smith*, the Third Circuit held that a pharmaceutical

6

sales representative was not entitled to overtime pay because she qualified for the administrative exemption under the FLSA. *Id.* at 285. In *Smith*, the plaintiff testified regarding the independent and managerial qualities that her position required. Smith described herself as "the manager of her own business who could run her own territory as she saw fit." *Id.* Though the duties of a particular position is a fact-sensitive inquiry, the facts in *Smith* are startlingly similar to the case at bar. Johnson & Johnson ("J&J"), Smith's employer, gave her a list of target doctors that it created and told her to complete an average of ten visits for day. *Id.* at 282. J&J left the itinerary and order of Smith's visits to the target doctors to her discretion. *Id.* The J&J target list identified "high-priority" doctors that issued a large number of prescriptions for the drug that Smith was promoting, or a competing product. *Id.* While meeting with doctors, Smith worked off of a prepared "message" that J&J provided, although she had "some discretion when deciding how to approach the conversation. *Id.* J&J gave her visual aids and did not permit her to use other aids." *Id.*

Here, the plaintiffs were assigned a geographic territory for which they were solely responsible. (Def.'s 56.1 Stmt. at ¶ 40; Doc. No. 81-4.) They worked alone the majority of the time. (*Id.* at ¶ 42.) PSRs controlled their territory by developing business plans designed to grow their business and also by governing their own day-to-day activities[2]. (*Id.* at ¶ 72.) PSRs decided when and where to travel (their "routing") and with whom to meet in order to effectuate the most business. (Def.'s 56.1 Stmt. at ¶¶ 51, 67-68.) In executing individual calls, the plaintiffs had discretion by deciding how to approach the physician, what topics to discuss with the physician,

---

[2] This fact is not technically undisputed because the plaintiffs did not respond "undisputed." However, the plaintiffs only dispute the characterization of the facts, not the underlying facts themselves.

and what materials to use (though the universe of materials were provided to them, as in *Smith*). (Def.'s 56.1 Stmt. at 59, 83, 97.)

Plaintiffs argue that this case is distinguishable from *Smith*, because here the plaintiffs worked under a "closely supervised and tightly controlled regime, exercising no independence and discretion in any important matters." (Pl.'s Br. in Opp. at 35; Doc. No. 83.) Plaintiffs argue that the controlling nature of Alpharma, as noted in the facts section above, differs from the type of "freelancing" done by the plaintiff in *Smith*. (*Id.* at 36.) Further, plaintiffs note that the regulations provide a nonexhaustive list of factors for use in the Court's examination of whether or not an employee exercises the requisite discretion and judgment to fit within the exemption. (*Id.* at 31.) The list includes:

> whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to the operation of a particular segment of the business; . . . whether the employee has authority to waive or deviate from established policies and procedures without prior approval; . . . whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; . . . and whether the employee represents the company in handling complaints, arbitrating disputes, or resolving grievances.

29 C.F.R. § 541.202(b). Plaintiffs argue that they do not meet a single one of the identified factors, nor any surrogates of those factors, and thus do not exercise discretion or independent judgment. (Pls.' Br. at 32; Doc. No. 83.)

The Court concludes that the plaintiffs in this case, like the plaintiff in *Smith*, qualify for the administrative employee exemption. While this case lacks the direct testimony of the plaintiffs regarding their autonomy and independent nature, the underlying facts differ little from the facts in *Smith*. Through either stipulation or undisputed facts (not plaintiffs' characterizations

of those facts), it is clearly shown that the plaintiffs in this case (1) earn a salary high enough to qualify for the first prong of the exemption, (2) perform non-manual work directly related to the general business operations of their employer, and (3) exercise discretion and independent judgment with respect to matters of significance.  Of the ten factors listed in § 541.202(b), the Court concludes that the plaintiffs satisfy the same two that Smith did: their work for advancing the sales of their products within their territories "affects business operations to a substantial degree," and they are "involved in planning long- or short-term business objectives" related to the marketing of their products within their territories. 29 C.F.R. § 541.202(b).  These conclusions are buttressed by the plaintiffs' duties to write reports and business plans to determine where their business was coming from, to detect trends in the sales of the drug, and to generate ideas on how to grow the business.  (Def.'s 56.1 Stmt. at ¶ 76; Doc. No. 81-4.)

In supplemental submissions, the plaintiffs direct the Court's attention to two new cases: *Jirak v. Abbott Laboratories, Inc.*, Civ. No. 07-3626 (N.D. Ill. June 10, 2010) (Doc. No. 85) and *In re Novartis Wage and Hour Litigation*, Civ. No. 09-0437 (2d Cir. July 6, 2010) (Doc. No. 87). In light of the Third Circuit's clear opinion in *Smith*, and subsequent nonprecedential opinion in *Baum v. Astrazeneca LP*, 2010 U.S. App. LEXIS 6047 (3d Cir. Mar. 24, 2010), the Court does not find it necessary to discuss these other cases.

The defendants also move for summary judgment based on the outside sales exemption and the inapplicability of the plaintiffs' state law claims.  Because the Court has already concluded that the plaintiffs qualify for the administrative employee exemption to the FLSA, it need not address the outside sales exemption.  Further, because all that remains is New Jersey state law claims, the Court will decline to exercise supplemental jurisdiction over those

remaining claims.

### III.    CONCLUSION

For the reasons discussed herein, the Court will grant the defendant's motion for summary judgment.  An appropriate form of order is filed herewith.


Dated: July 19th, 2010


    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.